IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

SUSHMA JONES,                                )
                                             )
                    PLAINTIFF,               )        CIVIL ACTION NO. _____
                                             )
        vs.                                  )
                                             )        HON.
THE DOW CHEMICAL COMPANY,                    )
                                             )
                    DEFENDANT.               )
_____      )

## COMPLAINT

PLAINTIFF, SUSHMA JONES, by and through her attorneys, CARLA D. AIKENS, P.L.C.,

submits the following Complaint and Demand for Trial by Jury against THE DOW CHEMICAL

COMPANY.

## JURY DEMAND

COMES NOW PLAINTFF, and hereby makes her demand for trial by jury.

## JURISDICTION

1.      At all times relevant to this complaint, PLAINTIFF SUSHMA JONES was a resident of

Saginaw, County in the State of Michigan.

2.      DEFENDANT THE DOW CHEMICAL COMPANY is a domestic profit corporation,

        which has a place of business in Midland, Michigan.

3.      This action is brought in this Court on the basis of federal question jurisdiction, pursuant

to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's

state law claims.

1

**VENUE**

5.      Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

**STATEMENT OF FACTS**

6.      January 10, 2022, Plaintiff, a Black woman, was hired as a Logistics Technician by Defendant.

7.      The harassment of Plaintiff started on or about March 5, 2022, when Plaintiff was accused of cutting a hose on the machine by the head operator, Don Wilson.

8.      Plaintiff worked with mostly white males, including Wilson.

9.      Wilson yelled at Plaintiff to "just clean this s*** up" after chemicals spilled on the floor due to a machine that malfunctioned and overfilled the drum.

10.     After taking another look another head operator, "Eric," realized that the hose was broken from wear and tear.

11.     The next day, March 6, 2022, Wilson approached Plaintiff again accusing her of cutting the hose and requested that he train her again. When Plaintiff did not agree, Wilson told other operators and turned them against Plaintiff.

12.     The other operators would not help Plaintiff with any of her tasks, making her job very hard and stressful because of Wilson's relationship with said operators.

13.     Plaintiff was told that the other operators and Wilson wanted to have Plaintiff demoted and ultimately fired.

14.     On March 14, 2022, Plaintiff spoke with her trainer, "Scott," and told him she was being harassed, bullied, and overworked. However, once Plaintiff realized that Scott was not

neutral and was taking the side of Wilson, she ended the conversation.

15. The same day Plaintiff met with Moe McGee and Jason Ellision, and her shift was then changed.

16. Ellison apologized to Plaintiff and said he would be more aware of what was happening with her.

17. After the meeting, McGee called a staff meeting but none of the wrongdoers attended the meeting.

18. When McGee asked Wilson why he did not attend the meeting, he replied "f*** that s***."

19. Several of Plaintiff's white, male coworkers continued to harass Plaintiff.

20. In March of 2022, Plaintiff's doctor noted that Plaintiff had major depressive disorder, anxiety, and told her that she may need to find a different job.

21. In May of 2022, Plaintiff filed several complaints with human resources and several of the complaints were closed, upon information and belief without investigation. Plaintiff was told by a co-worker to re-open the complaints as ethics reports instead.

22. On May 20, 2022, Plaintiff filed the ethics reports.

23. On May 23, 2022, Plaintiff went for an occupational visit for work related stress because of the harassment and fear of getting fired, which was weighing heavily on her.

24. Plaintiff's doctor advised her to take off work and put her on medication because of the stress from work.

25. Immediately after Plaintiff reported the harassment, she was moved to a different, less desirable shift by the same supervisor in whom she had confided.

26. However, the individuals who were harassing Plaintiff did not receive less-favorable

assignments.

27.     On June 19, 2022, upon information and belief, Plaintiff was refused overtime because of the ethics reports she filed against the head operators.

28.     While Plaintiff was walking to the June 23, 2022 staff meeting, operator Ronald Chamberlin stopped her and told her that he just watched the movie Harriet Tubman and that Plaintiff looks like her.

29.     This comment triggered Plaintiff because Chamberlain had also told Plaintiff to stop working like a slave a few months prior.

30.     Plaintiff reported this comment to her supervisor and she was immediately moved to a different building, again to a less desirable job and shift.

31.     Defendant purportedly did an investigation and determined that there was a "personality clash" but found no evidence of racial bias.

32.     Plaintiff filed a charge of discrimination with the EEOC on July 28, 2022, on the basis of race and retaliation.

33.     On April 27, 2023, Plaintiff received a Right to Sue letter, and this lawsuit followed.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII

34.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

35.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

36.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

37. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

38. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff protested and reported harassment to human resources.

39. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issue directly to agents of Defendant.

40. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts.

41. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

42. Plaintiff notified Defendant and its agents of the unwelcome conduct and communication; however, Defendant failed to remedy the same.

43. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

44. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

45. Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT II**
**RETALIATION IN VIOLATION OF THE ELCRA**

46. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

47. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

48.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

49.     Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

50.     Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, reporting to human resources the inappropriate harassing behavior by her co-workers.

51.     Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issue directly to agents of Defendant.

52.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts.

53.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

54.     Plaintiff notified Defendant and its agents of the unwelcome conduct and communication; however, Defendant failed to remedy the same.

55.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

56.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

57.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III

## GENDER HARRASMENT/DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

58.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

59.   At all material times, Defendant was an employer covered by, and within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA"), as amended.

60.   Defendant's conduct, as alleged herein, violated ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of gender.

61.   A respondeat superior relationship existed because Plaintiff's supervisors, had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

62.   Plaintiff is a woman and a member of a protected class.

63.   Plaintiff was subjected to communication or conduct on the basis of her gender, as indicated in the facts above.

64.   Male employees who worked for Defendant harassed Plaintiff, and did not treat other male employees in the same manner.

65.   The communication and conduct from the employees was unwelcomed.

66.   The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

67.   Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

68. As a direct and proximate result of Defendant's and Defendant's agent's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and was constructively terminated.

## COUNT IV

## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")

69. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

70. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

71. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race.

72. Plaintiff is a Black woman, and, as a result, is a member of a protected class pursuant to Title VII.

73. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

74. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

75. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

76. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

77. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

78. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V

### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

79. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

80. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

81. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

82. Plaintiff is a Black woman, and, as a result, is a member of a protected class pursuant to ELCRA.

83. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

84. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

9

85.   The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

86.   As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

87.   Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI

## HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF TITLE VII

88.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

89.   At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

90.   A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

91.   Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

92.   Plaintiff's work environment, as alleged in the statement of facts, made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

93.     Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's ability to accuse Plaintiff of misbehaving made the situation untenable.

94.     The communication and conduct were unwelcomed.

95.     The unwelcomed conduct and communication were intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile. and offensive work environment, as alleged in the statement of facts.

96.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

97.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

98.     Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT VII**
**HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ELCRA**

99.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

100.    At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

101.    A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

102.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

103. Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

104. Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's ability to ignore Plaintiff's complaints made the situation untenable.

105. Additionally, Defendant's treated female employees, such as Plaintiff, in a hostile, intimidating, and offensive way.

106. The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

107. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

108. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

109. Plaintiff requests relief as described in the Prayer for Relief below

## **RELIEF REQUESTED**

PLAINTIFF, SUSHMA JONES, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  July 26, 2023     Respectfully Submitted,

           CARLA D. AIKENS, P.L.C.

           /s/ Carla D. Aikens
           Carla D. Aikens (P69530)
           Tasha Brownlee (P84359)
           615 Griswold St., Ste. 709
           Detroit, MI 48226
           carla@aikenslawfirm.com
           tasha@aikenslawfirm.com
           *Attorneys for Plaintiff*